UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

JOSEPH CUNNINGHAM,           :
         Plaintiff,          :
         v.             :     No.  5:20-cv-01429
                           :
ALBRIGHT COLLEGE, JACQUELYN FETROW, :
KAREN CAMPBELL and MARY MCGEE,   :
         Defendants.      :

**O P I N I O N**
**Partial Motion to Dismiss for Failure to State a Claim, ECF No. 11 – Granted**

**Joseph F. Leeson, Jr.**                                  **May 27, 2021**
**United States District Judge**

## I.    INTRODUCTION

Plaintiff Joseph Cunningham filed suit against Defendant Albright College, its President, Provost, and Vice President of Academic Affairs,[1] alleging claims including sex and age discrimination, violation of the Equal Pay Act, and breach of contract.  Following this Court's grant of Defendants' first partial motion to dismiss, Cunningham filed an Amended Complaint. Defendants now file the present partial motion to dismiss the Amended Complaint.

 Defendants' partial motion to dismiss the Amended Complaint is granted.  Counts I, IV, and V are dismissed with prejudice as untimely.  Cunningham's Equal Pay Act claim, Count III, to the extent Cunningham seeks to recover for paychecks issued prior to February 28, 2018, is dismissed with prejudice as untimely.  Count III may proceed against Albright to the extent

---

[1]    Defendant Jacquelyn Fetrow is the President of Albright College.  *See* Am. Compl. ¶ 15, ECF No. 20.  Defendant Karen Campbell is the Provost of Albright College and Professor of Biology.  *See id.* at ¶ 16.  Defendant Mary McGee is the former Provost and current Vice President of Academic Affairs at Albright College.  *See id.* at ¶ 17.

Cunningham seeks to recover for disparate paychecks issued on or after February 28, 2018. Counts II, VI, and VII are dismissed with prejudice for failure to state a claim.

As a result of Defendants' present motion, all of Cunningham's claim are dismissed with prejudice with the exception of one. The only surviving claim against Albright is Cunningham's Equal Pay Act claim in Count III. This claim survives only to the extent that Cunningham seeks compensation for disparate paychecks issued after February 28, 2018.

## II.    BACKGROUND[2]

Albright, a non-profit college in Reading, Pennsylvania, first employed Cunningham as an Assistant Professor of Accounting for the 2013–2014 academic year. *See* Am. Compl. ¶¶ 14, 18. Cunningham's employment was renewed for each subsequent academic year via annual contracts. *See id.* at ¶ 19. In the 2016–2017 academic year, his continued employment with Albright was conditioned on his completion of tenure qualifications. *See id.* Cunningham filed the requisite application for tenure during the 2016-2017 academic year. *See id.* at ¶ 20. On December 26, 2016, Albright denied Cunningham's application for tenure. *See id.* at Ex. C ("Denial Ltr."), ECF No. 20-1. The denial letter also specified that Cunningham would be offered a terminal contract for the 2017–2018 academic year. *See id.* Cunningham contends that the Tenure Committee, including Mary McGee, deviated from the tenure procedure detailed in the Albright Employee Handbook. *See id.* at ¶ 27; *see also id.* at Ex. A. ("Handbook").

In the spring of 2017, during his terminal year, Cunningham became aware that a female colleague in his department with less seniority and experience was being paid more than him. *See id.* at ¶ 23. Cunningham brought this pay disparity to Albright's attention during his fall

---

[2]    The Background is taken, in large part, from allegations in Cunningham's Amended Complaint. *See* Am. Compl.

2017 salary review. *See id.* at ¶ 24. In December 2017, Cunningham received an extra $5,000 in pay, part of which constituted a general wage increase to all employees. *See id.* at ¶ 25.

Following the conclusion of the 2018 academic year, Cunningham was terminated, and he contends he was replaced by a "younger individual in the accounting department with less experience and qualifications" than him. *See id.* at ¶ 28. Upon his exit, Cunningham requested a certificate for his five years of service, and his request was denied. *See id.* at ¶ 30. Cunningham's final contract with Albright terminated on June 15, 2018. *See id.* at Ex. I.

On October 10, 2018, Cunningham filed a charge of discrimination with the Pennsylvania Human Relations Commission (PHRC) and dually filed it with the Equal Opportunity Employment Commission (EEOC). *See id.* at ¶ 32. The EEOC closed the claim on November 29, 2019, and issued a Notice of Right to Sue to Cunningham. *See id.* at ¶ 33.

On February 28, 2020, following receipt of the Notice of Right to Sue, Cunningham instituted the present action, alleging claims that include sex discrimination, Equal Pay Act violations, age discrimination, and breach of contract. *See* Compl., ECF No. 1. Following a motion to dismiss by Defendants, Cunningham's Complaint was dismissed with the exception of part of his Equal Pay Act claim. *See Cunningham v. Albright*, No. 5:20-cv-01429, 2020 WL 7640912, at *1 (E.D. Pa. Dec. 23, 2020). Cunningham has since filed an Amended Complaint. *See* Am. Compl. Therein, he alleges the following claims against the Defendants:

(1) "Discrimination Based on 'Age' in Violation of 29 U.S.C.S. § 623;"

(2) "Discrimination Based on Retaliation and Harassment;"

(3) "Discrimination Retaliation Based on Violation of Equal Pay Act;"

(4) "Discrimination Based on Sex;"

(5) "Age Discrimination in Employment Act;"

(6) "Retaliatory Discharge & Pendant State Claim;" and

(7) "Breach of Contract & Pendant State Claim."

*See id.*

In response, Defendants filed the present partial motion to dismiss Cunningham's Amended Complaint. *See* Mot., ECF No. 23. Specifically, Defendants move to dismiss all Counts in Cunningham's Amended Complaint with the exception of a portion of the Equal Pay Act claim. To date, Cunningham has failed to respond to the present motion or seek leave to amend.

## III. LEGAL STANDARDS

### A. Review of Motion to Dismiss – Applicable Law

In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint,

exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

**B. Title VII Sex Discrimination and Age Discrimination in Employment Act – Applicable Law**

Disparate treatment claims brought under Title VII and the ADEA are analyzed using the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Rabinowitz v. AmeriGas Partners, L.P.*, 252 F. App'x 524, 527 (3d Cir. 2007). To establish a prima facie case of discrimination under Title VII, a plaintiff must allege:

(1) He is a member of a protected class;

(2) He is otherwise qualified for the position at issue;

(3) He suffered an adverse employment action; and

(4) That adverse action occurred under circumstances that give rise to an inference of discrimination.

*See Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 327 (3d Cir. 2015); *see also McDonnell Douglas*, 411 U.S. 792.

Once a plaintiff establishes a prima facie case, the burden then "shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment decision." *Fasold v. Justice*, 409 F.3d 178, 184 (3d Cir. 2005). "If the employer articulates one or more such reasons, the aggrieved employee must then proffer evidence that is sufficient to allow a

reasonable finder of fact to find by a preponderance of the evidence that the employer's proffered reasons are false or pretextual." *See id.*

Notwithstanding, prior to filing a Title VII claim in district court, "a plaintiff must exhaust all required administrative remedies . . . ." *See Robinson v. Dalton*, 107 F.3d 1018, 1020 (3d Cir. 1997). "Title VII requires aggrieved persons to file a complaint with the EEOC 'within one hundred and eighty days after the alleged unlawful employment practice occurred.'" *See Del. State Coll. v. Ricks*, 449 U.S. 250, 257 (1980) (citing 42 U.S.C. § 2000e-5(e)). Alternatively, where a plaintiff initiates proceedings for relief with a state or local agency, the "charge shall be filed . . . within three hundred days after the alleged unlawful employment practice occurred . . . ." *See* 42 U.S.C. § 2000e-5(e). A plaintiff's timely filing with the EEOC is a "prerequisite to maintaining an action in the district court." *See Rogan v. Giant Eagle, Inc.*, 113 F. Supp. 2d 777, 790 (W.D. Pa. 2000). In cases where denial of tenure is the alleged discriminatory act, the clock for filing with the appropriate agency begins to run when the decision to deny tenure was made and communicated to the plaintiff. *See Ricks*, 449 U.S. 258-59.

To state a claim for age discrimination, a plaintiff must allege:

(1) He is over forty;

(2) He is qualified for the position in question;

(3) He suffered from an adverse employment decision; and

(4) His replacement was sufficiently younger to permit a reasonable inference of age discrimination.

*Hill v. Borough of Kutztown*, 455 F.3d 225, 247 (3d Cir. 2006). Alternatively, a plaintiff may establish a prima facie case of age discrimination by showing that younger employees were

treated more favorably.  *See Steinagel v. Valley Oral Surgery*, No. 12-cv-05645, 2013 U.S. Dist. LEXIS 141146, at *19-20 (E.D. Pa. Sept. 30, 2013).  As with Title VII claims, an aggrieved party under the ADEA must file a charge of discrimination with the EEOC within 300 days after the alleged unlawful practice.  *See* 29 U.S.C. § 626(d)(1)(B).[3]

### C. Title VII Retaliation – Applicable Law

To make out a prima facie case of Title VII retaliation, a plaintiff must allege:

(1) He "engaged in a protected activity;"

(2) "[A]dverse action by the employer either after or contemporaneous with the employees protected activity;" and

(3) a "causal connection between the protected activity and the adverse action."

*Moore v. Sec'y U.S. Dep't Homeland Sec.*, 718 F. App'x 164, 166 (3d Cir. 2017) (citing *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015)).  As with any Title VII claim, a plaintiff must exhaust his administrative remedies.  *See Robinson*, 107 F.3d 1018, 1020 (3d Cir. 1997).

"With respect to 'protected activity,' the anti-retaliation provision of Title VII protects those who participate in certain Title VII proceedings (the 'participation clause') and those who oppose discrimination made unlawful by Title VII (the 'opposition clause')."  *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006).  "Whether the employee opposes, or participates in a proceeding against, the employer's activity, the employee must hold an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII."  *Id.*

---

[3]      The 300-day limitations period applies where the violation occurs in a state that has a law prohibiting age discrimination and an agency equipped to provide relief for such violations.  *See* 29 U.S.C. § 633(b).  Where no such state regime for relief exists, the aggrieved party has 180 days to file their charge with the EEOC.  *See id.* § 626(d)(1)(A).  Here, because Cunningham dually filed with the PHRC, a Pennsylvania state agency equipped to provide relief for claims of age discrimination, his limitations period for filing with the EEOC is 300 days from the date of the alleged unlawful practice.

"Once a plaintiff establishes a prima facie case, the burden shifts to the employer to advance a legitimate non-retaliatory reason for its conduct. If an employer advances such a reason, a plaintiff then must show that the proffered reason was a pretext for retaliation." *Estate of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 798 (3d Cir. 2010).

### D. Breach of Contract – Applicable Law

A breach of contract claim requires a plaintiff to allege three elements:

(1) "the existence of a contract, including its essential terms;"

(2) "a breach of a duty imposed by the contract;" and

(3) "resultant damages."

*Udodi v. Stern*, 438 F. Supp. 3d 293, 299 (E.D. Pa. 2020) (quoting *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003)).

"A handbook is enforceable against an employer if a reasonable person in the employee's position would interpret its provisions as evidencing the employer's intent to supplant the at-will rule and be bound legally by its representations in the handbook." *Makara v. Albert Einstein Healthcare Network*, Civ. A. No. 08-5545, 2009 WL 1011753, at *4 (E.D. Pa. Apr. 14, 2009) (quoting *Bauer v. Pottsville Area Emergency Med. Serv., Inc.*, 758 A.2d 1265, 1269 (Pa. Super. Ct. 2000)) (noting the handbook must contain a "clear indication that the employer intended to overcome the at-will presumption").

### E. Equal Pay Act – Applicable Law

Equal Pay Act claims require a burden shifting analysis. *See E.E.O.C. v. State of Del. Dep't of Health & Soc. Servs.*, 865 F.3d 1408, 1413 (3d Cir. 1989). A plaintiff must begin by alleging "that employees of the opposite sex were paid differently for performing 'equal work'; that is, work of substantially equal skill, effort, and responsibility under similar working

conditions." *See id.* at 1413-14 (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974)).  Once a plaintiff establishes a prima facie case, the burden shifts to the employer to establish any of four statutory defenses.  *See id.* at 1414.  A defendant may show that the differential pay was made pursuant to "(i) a seniority system, (ii) a merit system, (iii) a system which measures earnings by quantity or quality of production, or (iv) a differential based on any other factor other than sex." *Corning Glass Works*, 417 U.S. at 196.

"Violations of the [Equal Pay Act] are subject to a two-year statute of limitations, unless the violation is shown to be willful, in which case the statute of limitations is extended to three years." *Schengrund v. Pa. State Univ.*, 705 F. Supp. 2d 425, 440 (M.D. Pa. 2009) (citing 29 U.S.C. § 255; *Miller v. Beneficial Mgmt. Corp.*, 977 F.2d 834, 842 (3d Cir. 1992)).  Additionally, each disparate paycheck constitutes a new discriminatory action for the purpose of claim accrual. *See id.*

F.     **Equitable Tolling – Applicable Law**

Equitable tolling of a limitations period may be appropriate where "a claimant received inadequate notice of her right to file suit, where a motion for appointment of counsel is pending, or where the court has misled the plaintiff into believing that she had done everything required of her." *See Seitzinger v. Reading Hosp. and Med. Ctr.*, 165 F.3d 236, 240 (3d Cir. 1999) (citing *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984)).  Equitable tolling may also be appropriate "when the defendant has actively misled the plaintiff; when the plaintiff 'in some extraordinary way' was prevented from asserting her rights; or when the plaintiff timely asserted her rights in the wrong forum." *See id.* (quoting *United States v. Midgley*, 142 F.3d 174 (3d Cir. 1998)).  "The law is clear that courts must be sparing in their use of equitable tolling." *See id.* at 239.

## IV.    DISCUSSION

As was the case with this Court's prior Opinion, Cunningham's claims can be separated into three categories.  First, Counts I, III, IV, and V are either fully or partially time barred.  Second, Counts II and VI, and VII fail to allege plausible claims.  Third, Cunningham's claims of individual liability are dismissed with prejudice because the claims upon which individual liability is premised are so dismissed.  Each category of claims is discussed below.

### A.    Time Barred Counts

### 1.    Title VII Sex Discrimination Claim (Count IV) and ADEA Claims (Counts I and V).

Cunningham claims that Defendants unlawfully discriminated and retaliated against him.  Specifically, Cunningham contends that his denial of tenure and subsequent termination were unlawfully based on his sex and age.

In its prior Opinion, this Court dismissed Cunningham's Title VII sex discrimination claim and ADEA claim without prejudice, finding both were untimely filed with the EEOC. [4] *See Cunningham*, 2020 WL 7640192, at *5-6.  This Court indicated that absent a sufficient basis for equitable tolling of the limitations period, these claims would remain untimely.  *See id.* at *6 n.8.  In his Amended Complaint, Cunningham fails to allege any facts that would warrant equitable tolling of the limitations period.  Accordingly, Counts I, IV, and V are dismissed with prejudice.

---

[4]    In its prior Opinion, this Court dismissed Count I for failure to provide a legal basis for the claim.  *See Cunningham*, 2020 WL 7640192, at *7.  In his Amended Complaint, Cunningham now indicates that he asserts Count I under 29 U.S.C. § 623, part of which is otherwise known as the Age Discrimination in Employment Act (ADEA).  Accordingly, Count I is now duplicative of Count V, and both plead causes of action under the ADEA.

To summarize the analysis performed by this Court in its prior Opinion, Cunningham's discrimination claims accrued on the date that Albright made and communicated the decision to deny tenure. *See Ricks*, 449 U.S. 258-59. Cunningham had 300 days from that particular date to file his charge because he dually filed his charge with the EEOC and the PHRC. *See* 42 U.S.C. § 2000e-5(e); 29 U.S.C. § 626(d)(1)(B). On December 26, 2016, Albright clearly communicated to Cunningham that he was denied tenure and that his employment would end following the 2017-2018 school year. *See* Denial Ltr. Notwithstanding, Cunningham did not file his charge of discrimination with the PHRC and EEOC until October 10, 2018, *see id.* at ¶ 32, well beyond the 300-day limit for filing.

In its prior Opinion, this Court dismissed Cunningham's Title VII and ADEA claims without prejudice, so as to provide Cunningham an opportunity to allege a basis for equitable tolling. Notwithstanding, Cunningham has not alleged any facts in his Amended Complaint that would warrant equitable tolling of the limitations period for these claims. Accordingly, Counts I, IV, and V are dismissed with prejudice.[5]

---

[5] The dismissal is one with prejudice because to permit another amendment would be to work an inequity against Defendants. *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (holding that "even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile"). Cunningham was provided an opportunity to cure the defects in his original Complaint. In dismissing his original Complaint, this Court indicated to Cunningham that he failed to allege facts that would warrant equitable tolling of his untimely Title VII and ADEA claims. *See Cunningham*, 2020 WL 7640192, at *6 n.8; *see also Krantz v. Prudential Invs. Fund Mgmt. LLC*, 305 F.3d 140, 144-45 (3d Cir. 2002) ("A District Court has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them."). Despite notice, Cunningham failed to plead any facts in his Amended Complaint that would warrant tolling. Moreover, Cunningham failed to respond to the present motion to dismiss and has similarly failed to request leave to amend. Accordingly, it would work an inequity to permit further amendment of these claims.

### 2. Equal Pay Act Claim (Count III)

Cunningham next alleges that he was paid less than a female colleague engaged in the same work with less qualifications and experience. In its prior Opinion, this Court dismissed part of Cunningham's Equal Pay Act claim without prejudice as untimely. Cunningham filed an Amended Complaint, and Defendants again move to dismiss part of Cunningham's equal pay claim. After review of the Amended Complaint, Cunningham's Equal Pay Act claim is dismissed in part with prejudice.

To summarize this Court's prior Opinion, Equal Pay Act claims have a two-year statute of limitations, except in cases involving willful violations. *Schengrund*, 705 F. Supp. 2d at 440. The two-year limitations period is appropriate in this case, as Cunningham does not provide any sufficient allegations in his Amended Complaint that Albright acted in willful violation of the Equal Pay Act. Accordingly, because Cunningham filed the present action on February 28, 2020, his recovery is limited to disparate paychecks issued on or after February 28, 2018.

Regarding any disparate pay arising on or after February 28, 2018, Cunningham has made out a prima facie case, and the claim remains viable. As the Court stated in its prior Opinion,

> Cunningham alleges that a female assistant professor in his same department—who had "the same duties and responsibilities" as him—was paid more than him for the same work. *See* Compl. ¶¶ 23, 46. Cunningham bolsters this claim by alleging that the female colleague had less experience and fewer credentials than him. *See id.* These allegations, taken as true for the purpose of the present motion, suffice to establish a prima facie case of an Equal Pay Act violation. Therefore, those claims of disparate pay arising between February 28, 2018, and the date of Cunningham's final paycheck may proceed.

*See Cunningham*, 2020 WL 7640192, at \*6.

Accordingly, Cunningham's Equal Pay Act claim remains viable to the extent Cunningham seeks relief for paychecks issued on or after February 28, 2018.

However, to the extent Cunningham seeks relief for paychecks issued before February 28, 2018, his claim is dismissed with prejudice. Consistent with this Court's treatment of Cunningham's other untimely claims, this Court permitted Cunningham the opportunity to amend his Complaint and provide a basis for equitable tolling of the limitations period. Notwithstanding, Cunningham's Amended Complaint does not contain any new allegations that would support any of the aforementioned bases for equitable tolling. Accordingly, Cunningham's claims of disparate pay arising before February 28, 2018 are dismissed with prejudice.[6]

### B. Counts in which Cunningham Fails to State a Claim

### 1. "Discrimination Based on Retaliation and Harassment" (Count II)

Count II in Cunningham's Amended Complaint is labeled as "Discrimination Based on Retaliation and Harassment." Therein, Cunningham provides allegations that sound in discrimination, retaliation, harassment, breach of contract and the Equal Pay Act. In this Court's prior Opinion, Count II was dismissed without prejudice for failure to provide the legal basis grounding the claim.

Cunningham was cautioned that "[t]here is no 'duty (on the part) of the trial court or the appellate court to create a claim which [plaintiff] has not spelled out in his pleading,'" *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975) (citing *Case v. State Farm Mut. Auto. Ins. Co.*, 294 F.2d 676, 678 (5th Cir. 1961)). Moreover, this Court instructed

---

[6] As is the case with Counts I, IV, and V, Cunningham was put on notice that he failed to plead any facts that would warrant equitable tolling of his Equal Pay Act Claim. *See Cunningham*, 2020 WL 7640192, at *6. Notwithstanding, Cunningham failed to allege any such facts in his Amended Complaint. *See Krantz*, 305 F.3d 144-45 (dismissal with prejudice where plaintiff failed to correct known deficiencies in complaint). Accordingly, to permit further amendment under these circumstances would be to work an inequity against Defendants. *See Alston*, 363 F.3d 235.

Cunningham that any amendment "must include sufficient allegations to *identify* and support each claim." *See Cunningham*, 2020 WL 7640192, at *7 (emphasis added). Notwithstanding, Count II of Cunningham's Amended Complaint fails to identify what claim he intends to assert. Accordingly, Count II still falls short of the requirements of Rule 8(a) of the Federal Rules of Civil Procedure. *See* FED. R. CIV. PROC. 8(a).

The new allegations in Count II of the Amended Complaint are plagued by the very same deficiencies as the allegations from the Original Complaint. Some of the new allegations relate to Cunningham's breach of contract claim, *see* Am. Compl. ¶¶ 47, 50, some relate to retaliation, *see id.* at ¶ 53, some relate to his equal pay claim, *see id.* at ¶¶ 48, 57, and some relate to disparate treatment discrimination, *see id.* at ¶ 59. It is wholly unclear what legal claim Cunningham attempts to assert through the allegations in Count II. Thus, Count II falls short of the requirements of Rule 8(a), and Count II is dismissed with prejudice.[7]

### 2. "Retaliatory Discharge & Pendant State Claim" (Count VI)

Count VI is labeled "Retaliatory Discharge & Pendant State Claim." *See id.* Therein, as with Count II, Cunningham provides allegations that relate to retaliation, unequal pay, sex-based discrimination, age-based discrimination, and breach of contract. Accordingly, it is unclear what claim Cunningham wishes to assert. Most of the new allegations relate most closely to Cunningham's equal pay claim, which was already dismissed in part *supra*. *See id.* at ¶¶ 99-105. Because of Cunningham's failure to identify a claim, it is unclear what separates Count VI from Cunningham's Equal Pay Act claim in Count III.

---

[7]     As more thoroughly set forth above, *see supra* notes 5-6, to permit Cunningham another opportunity to amend under the circumstances would be to work an inequity against Defendants. *See Alston*, 363 F.3d 235. Cunningham was notified of the factual deficiencies of Count II, and he failed to remedy those deficiencies in his Amended Complaint.

As this Court noted in its prior Opinion, to the extent Cunningham attempts to allege a common law claim of retaliatory discharge, that claim is preempted by the PHRA. *See Cunningham*, 2020 WL 7640192, at *7 (citing *Sola v. Lafayette Coll.*, 804 F.2d 40, 42 & n.2 (3d Cir. 1986)). Even in his Amended Complaint, Cunningham does not refer to the PHRA whatsoever.

Moreover, to the extent Cunningham wishes to assert a claim of retaliation under the Equal Pay Act, he has failed to do so. Assuming such a claim is available, Cunningham has failed to make out a requisite causal connection between his protected activity—complaining of unequal pay—and his termination. *See id.* at *7 n.10. Cunningham was alerted of his impending termination on December 26, 2016, when the President's tenure denial letter indicated Cunningham would be offered a terminal contract. *See* Denial Ltr. However, Cunningham alleges that he did not complain of unequal pay until July 28, 2017. *See* Am. Compl. ¶¶ 69, 100. Accordingly, because Cunningham was alerted of his termination before his alleged protected activity, he cannot conceivably allege that his engagement in protected activity caused the termination.

Accordingly Count VI still falls short of the requirements of Rule 8(a), and Count VI is dismissed with prejudice.[8]

---

[8]    As more thoroughly set forth above, *see supra* notes 5-7, to permit Cunningham another opportunity to amend under the circumstances would be to work an inequity against Defendants. *See Alston*, 363 F.3d 235. This Court notified Cunningham of the deficiencies in Count VI, and despite the opportunity to amend, Cunningham failed to remedy any of those deficiencies.

### 3. Breach of Contract (Count VII)

Cunningham next alleges, in Count VII, that Albright breached a contract with him in the form of an employee handbook. *See* Am. Compl. ¶¶ 114-17. Cunningham asserts that but for Albright's "obstruction of the proper process as outlined in the Albright Faculty Handbook" for reviewing tenure applications, he would have otherwise remained employed by Albright. *See id.* at ¶ 111. Notwithstanding, Cunningham has failed to sufficiently plead a claim for breach of contract.

To make out a claim for breach of the Handbook, Cunningham must first allege a clear intent by Albright to be bound by the handbook. S*ee Makara*, 2009 WL 1011753 at *3-4 (citing *Bauer*, 758 A.2d 1269). Then, Cunningham must allege that Albright breached a duty imposed upon it by the Handbook, causing injury to Cunningham. *See Udodi*, 438 F. Supp. 3d at 299 (quoting *Ware v.*, 322 F.3d at 225). Even if this Court's assumes, *arguendo*, that Cunningham has alleged that Albright intended to be bound by the Handbook, Cunningham fails to plausibly allege that Albright breached a duty imposed upon it by the Handbook.

Cunningham alleges five possible breaches of the Handbook. First, he alleges Albright breached by refusing to let him review his Rank and Tenure file for content and accuracy. *See* Am. Compl. ¶ 116. Second, Cunningham alleges Albright breached by failing to provide him a "clarity period" before undertaking an appeal. *See id.* at ¶¶ 52, 117. Third, Cunningham alleges Albright breached by failing to turn over external reviews of his scholarship. *See id.* at ¶¶ 52-54, 117. Fourth, Cunningham alleges Albright breached by failing to provide his son a Tuition Exchange benefit. *See id.* at ¶¶ 49, 116. Fifth, Cunningham alleges Albright breached by failing to include three articles in his Rank and Tenure file. *See id.* at ¶¶ 50, 116. All of these claims are plagued by the same defect; namely, Cunningham fails to plausibly allege a breach of a duty

imposed by the Handbook. Many of the duties that Cunningham attributes to Albright under the terms of the Handbook simply do not exist. Accordingly, Cunningham has failed to state a claim for breach of contract. Therefore, Count VII is dismissed with prejudice.

### a. Failure to Provide Review of the Rank and Tenure File

Cunningham first alleges that Albright breached Sections IV.C.5 and IV.C.6 of the Handbook by "not permitting his review of the [Rank and Tenure] file for content and accuracy." *See id.* at ¶ 116. However, neither Section imposes a duty on Albright to permit a candidate to review the Rank and Tenure file for content and accuracy.

Beginning with the former, Section IV.C.5 provides that a Rank and Tenure candidate shall have a Rank and Tenure file opened when he or she is considered for promotion or tenure. *See* Handbook § IV.C.5. Additionally, Section IV.C.5 provides that the file closes on "the day following the second Friday in October and no further information is added after that date without the unanimous approval of the candidate, the department chair, the ACRT chair, and the Chief Academic Officer." *See id.* Nowhere does Section IV.C.5 provide for any review of the file by a candidate for content or accuracy, and accordingly, Albright was under no such duty to provide that type of review.

Likewise, Section IV.C.6 does not provide for review of the Rank and Tenure File by the candidate. *See id.* § IV.C.6. Rather, Section IV.C.6 addresses the documents that must appear in the file, noting "[f]ailure to provide all specified materials will result in termination of consideration for tenure." *See id.* Section IV.C.6 further provides that, at the conclusion of the process, including any appeals, "the materials, except as noted in Section IV.C.6.i.i below, shall be returned to the candidate." *See id.* There is no language in Section IV.C.6 that places a duty on Albright to provide Cunningham, or any other candidate, the right to "review . . . the file for

content and accuracy." *See* Am. Compl. ¶ 116. Thus, because neither Section imposes a duty on Albright to provide a candidate the privilege to review the Rank and Tenure file, Cunningham has failed to state a breach of that Handbook provision.

### b. Failure to Provide a Clarity Period

Cunningham next alleges that he was entitled to a "clarity period for the collection of information in review of his file in order to proceed with an appeal of his denial of tenure."[9] *See id.* at ¶¶ 52, 117. Notwithstanding, Cunningham fails to cite any provision of the Handbook that provides for a "clarity period." Appeals of an adverse tenure decision are governed by Section V of the Handbook, subject to the provisions in Section IV that govern the timing of the entire tenure process. *See* Handbook § V; *see also id.* §§ IV.C.8, 11. Therein, this Court finds no mention of any "clarity period" owed a candidate who wishes to entertain an appeal of an adverse decision. [10] Rather, the Handbook explicitly provides that candidates have fourteen calendar days from receipt of the president's denial letter to effectuate an appeal. *See id.* § IV.C.8. Thus, the Handbook does not impose a duty on Albright to provide a "clarity period," and accordingly, Cunningham has failed to allege a plausible breach of these provisions of the Handbook.

### c. Failure to Provide Certain Scholarship Information

Next, Cunningham alleges that "McGee failed to provide scholarship information requested by Cunningham concerning professionally qualified faculty[,] which was essential for

---

[9]  Of note, Cunningham sent a letter to the President of Albright College on January 3, 2017, indicating his intent to not appeal the denial of tenure and promotion. *See* Am. Compl. Ex. D.

[10]  In fact, it appears from Cunningham's own exhibits that a "Period of Clarity" is a "change" to the tenure process that he recommended to then Chair of the Professional Council, Abby McGovern, Ph.D. *See* Am. Compl. Ex. F.

an appeal of tenure . . . ." *See* Am. Compl. ¶¶ 52, 117. Notwithstanding, Cunningham fails to set forth any breach of the Handbook. Foremost, Cunningham alleges that this failure occurred in "Spring 2016" during his "clarity period."[11] *See id.* at ¶ 52. As this Court already noted, the Handbook does not impose any duty on Albright to provide a "clarity period."

Although Cunningham fails to allege a specific provision of the Handbook that Albright breached, he does specify that the "scholarship information" at issue involved "external review results . . . concerning scholarship." *See id.* at ¶ 54. By the very terms of the Handbook, Albright was under no duty to return this information to Cunningham. In fact, the Handbook specifically states that "[e]xternal reviews of scholarship judged to be objective by the ACRT and Chief Academic Officer" are to "be removed from the [Rank and Tenure] file and placed in the candidate's personnel file" at the conclusion of the process. *See* Handbook §§ IV.C.6.i, IV.C.6.i.iii. Thus, the terms of the Handbook do not impose a duty on Albright to return this information to Cunningham, and accordingly, Cunningham has failed to state a breach of these Handbook provisions.

### d.    Failure to Provide Tuition Exchange Benefit

In a single allegation, Cunningham claims that Albright violated the Handbook by failing to provide "the faculty benefit of his son's educational tuition exchange to which he was entitled." *See* Am. Compl. ¶¶ 49, 116. Cunningham does not allege any provision of the Handbook that imposes a duty on Albright to provide this benefit. Accordingly, Cunningham fails to state a claim for breach of contract.

---

[11]    Although indicating "Spring 2016," it is likely that Cunningham meant to refer to spring 2017. In spring 2016, tenure decisions had not yet been made. Accordingly, it is unclear why Cunningham would have been contemplating an appeal before decisions were even rendered.

The Tuition Exchange program to which Cunningham refers is referenced in Section X.B.4.b of the Handbook.  *See* Handbook § X.B.4.b.  Notwithstanding, no provision in Section X.B.4.b indicates any *entitlement* to the benefits of the Tuition Exchange program.  Rather, the provision notes that the "program is highly competitive," implying that the benefit requires more than mere membership among the faculty at Albright.  *See id.*  Besides baldly alleging entitlement to the program, Cunningham fails to allege that he or his son qualified for the program.

Moreover, Cunningham's own exhibits to the Amended Complaint show that he requested this benefit after the termination of his final contract with Albright.  Cunningham's final contract with Albright expired on June 15, 2018.  *See* Am. Compl. Ex. I; *see also id.* at Ex. M ("Exit Interview") (indicating "Separation Date" of June 15, 2018).  Nevertheless, Cunningham sent an email to Kimberly Hubric, Director of Human Relations at Albright, on July 12, 2018, requesting the tuition benefit for his son.  *See id.* at Ex. K.  The Handbook states that the Tuition Exchange program is available only to "IRS-dependent children or stepchildren of *eligible full-time faculty members*."  *See* Handbook § X.B.4.b (emphasis added).

Accordingly, finding no provision in the Handbook indicating that Albright had a duty to provide the benefits of the Tuition Exchange program to Cunningham's son under the facts alleged, Cunningham fails to state a breach of the Handbook.

### e.    Failure to Include Articles

Finally, Cunningham alleges that "[i]n Fall of 2016, McGee denied Cunningham the ability to submit three professional articles that were out for publication into his portfolio."  *See* Am. Compl. ¶ 55.  Cunningham states that, "[a]ccording to the Albright Faculty Handbook, anything that benefits the candidate for promotion and tenure should be added and given to the

committee." *See id.* (citing Handbook § IV.B). Notwithstanding, neither Section IV.B nor any other provision in Section IV contains any such language. In fact, Section IV.C.11 provides that "[e]ligible faculty candidates must present scholarly and/or creative works . . . to the Chief Academic Officer" no later than the third Friday in June. *See* Handbook § IV.C.11. Here, Cunningham clearly alleges that he was denied the opportunity to submit these articles in "Fall of 2016." *See* Am. Compl. ¶ 55.

Moreover, the Handbook imposes no duty on Albright to include scholarship submitted after the third Friday in June. Rather, the Handbook provides that it is left to the discretion of the ACRT, Chief Academic Officer, President, and the Board of Trustees whether to consider such information. *See* Handbook § IV.B.3 (indicating information presented after beginning of evaluation "*may* be considered" (emphasis added)). Accordingly, because the Handbook does not impose an absolute duty on Albright to include any and all articles submitted after the deadline imposed by Section IV.C.11, Cunningham has failed to state a breach of this provision of the Handbook.

Having reviewed all of Cunningham's claims related to the alleged breach of the Handbook and finding that he has failed to state a plausible claim, Cunningham's breach of contract claim is dismissed with prejudice.[12]

---

[12]      As more thoroughly set forth above, *see supra* notes 5-6, to permit Cunningham another opportunity to amend under the circumstances would be to work an inequity against Defendants. *See Alston*, 363 F.3d 235. Through this Court's prior Opinion, Cunningham was made aware of factual deficiencies in his breach of contract claim. Notwithstanding, Cunningham did not cure those deficiencies in his Amended Complaint. Moreover, Cunningham failed to respond to the instant motion to dismiss or otherwise move for leave to amend.

**B. Individual Liability Claims**

In his Amended Complaint, Cunningham asserts Counts II, VI, and VII against the individual Defendants in addition to Albright. Notwithstanding, as this Court concludes above, Cunningham fails to state a claim under any of those Counts. Specifically, Cunningham falls short of the requirements of Rule 8(a) in Counts II and IV, and this Court dismisses those claims with prejudice. Additionally, Cunningham has failed to state a claim in Count VII for breach of contract, which this Court also dismisses with prejudice. Accordingly, because this Court dismisses Counts II, VI, and VII with prejudice, those claims are also dismissed as against the individual defendants.

With no claims remaining against the individual Defendants, Defendants Jacquelyn Fetor, Karen Campbell, and Mary McGee are dismissed from this action.

## V. CONCLUSION

The result of Defendants' motion to dismiss is the following:

(1)     The Title VII claim, Count IV, and ADEA claims, Counts I and V, are dismissed with prejudice as untimely.

(2)     The Equal Pay Act claim, Count III, to the extent Cunningham seeks to recover for paychecks issued prior to February 28, 2018, is dismissed with prejudice as untimely. The Equal Pay Act claim may proceed against Albright to the extent Cunningham seeks to recover for disparate paychecks issued on or after February 28, 2018.

(3)     Counts II, VI, and VII are dismissed with prejudice as to all Defendants for failure to state a claim.

(4)     There being no viable claims remaining against the individual Defendants,

Defendants Jacquelyn Fetor, Karen Campbell, and Mary McGee are dismissed from this

action.

Accordingly, the only claim that remains viable is Cunningham's Equal Pay Act claim in

Count III.  That claim remains viable only to the extent that it seeks relief for paychecks issued

on or after February 28, 2018.

A separate Order follows.


BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge